FILED
9/29/2026
JJR
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SAMUEL ROSS | No. 25 CR 654-3<br><br>Judge Thomas M. Durkin |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant SAMUEL ROSS, and his attorneys, SUSAN PAVLOW and STEVEN FINE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The amended indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346 (Counts 5-8).

3. Defendant has read the charges against him contained in the amended indictment, and the charges have been fully explained to him by his attorneys.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Eight of the amended indictment, which charges defendant with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Eight of the amended indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline §1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning in or around spring 2022, and continuing to in or around June 2023, at Evanston, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant SAMUEL ROSS knowingly participated in a scheme to defraud Evanston/Skokie School District 65 ("District 65") of money and property, by means of materially false and fraudulent pretenses, representations, and promises, and of the intangible right to the honest services of defendant Devon Horton through kickbacks, as further described below.

### ***Background***

Evanston/Skokie School District 65 was a public school district and unit of local government governed by the District 65 Board of Education (the "District 65 Board") and located in the Northern District of Illinois. District 65 contracted with certain

vendor-companies to provide professional services that supported the district's operations.

Devon Horton was employed as the superintendent of District 65 and supervised the day-to-day operations of District 65. SAMUEL ROSS acknowledges that as superintendent of District 65, Horton was an agent of District 65 and owed a duty of honest services to District 65.

SAMUEL ROSS was the sole owner and employee of Asset Protection Specialist, LLC ("Asset Protection"), an Illinois limited liability company. SAMUEL ROSS controlled a personal bank account at JP Morgan Chase (the "Samuel Ross personal account") and an account in the name of Asset Protection at JP Morgan Chase Bank (the "Asset Protection business account").

***The Scheme***

SAMUEL ROSS knowingly participated in a scheme in which Horton used his position as the District 65 superintendent to award contracts and to approve invoices on behalf of District 65 in exchange for agreeing to accept and accepting kickbacks from vendors of District 65. As part of the scheme, SAMUEL ROSS agreed to pay and paid kickbacks to Horton in exchange for steering District 65 contracts to Asset Protection and approving invoices so that Asset Protection would receive payment on the contracts. On many of the invoices, SAMUEL ROSS falsely and fraudulently billed District 65 for work and services which SAMUEL ROSS knew Asset Protection had not performed.

In or around spring 2022, Horton contacted SAMUEL ROSS and instructed him to form a company in order to obtain a contract with District 65. In or around May 2022, SAMUEL ROSS incorporated Asset Protection with the State of Illinois. At Horton's direction, SAMUEL ROSS prepared and submitted a contract proposal to District 65 such that Asset Protection would perform loss prevention services for District 65.

In or around early June 2022, SAMUEL ROSS and Horton signed a contract in the amount of $34,500 to have Asset Protection perform loss prevention services for District 65 (the "First Contract"). After the First Contract was signed, Horton called SAMUEL ROSS and told him to start submitting invoices to District 65 for payment. Later in or around June 2022, SAMUEL ROSS submitted the first Asset Protection invoice in the amount of $17,250 to District 65, and Horton approved the invoice.

In late or around June 2022, District 65 made a direct deposit of $17,500 into the Samuel Ross personal account as payment on the first invoice under the First Contract. After SAMUEL ROSS told Horton that he had received the first District 65 payment, Horton directed SAMUEL ROSS to give Horton one half of the payment. During this conversation, Horton suggested that SAMUEL ROSS should make the payment through Individual A, who was Horton's sibling. Later in the conversation, Horton directed SAMUEL ROSS to pay Horton in cash. SAMUEL ROSS and Horton

further communicated in order to set up a time and location so that SAMUEL ROSS could make the kickback payment to Horton.

At Horton's direction, SAMUEL ROSS converted a portion of the District 65 payment into cash, and gave a portion of that cash to Horton at SAMUEL ROSS's residence in Berwyn as a kickback payment from the First Contract.

In or around August 2022, SAMUEL ROSS submitted a second invoice in the amount of $17,500 on the First Contract to Horton, which Horton approved. In or around late August 2022, SAMUEL ROSS received payment on the second invoice, again via direct deposit into the Samuel Ross personal account. Horton contacted SAMUEL ROSS and asked whether SAMUEL ROSS had received payment on the second invoice. Based on Horton's prior direction to SAMUEL ROSS and SAMUEL ROSS's prior kickback payment to Horton, SAMUEL ROSS understood that Horton was asking about whether SAMUEL ROSS had received the District 65 payment because Horton expected to receive half of the payment as a kickback. SAMUEL ROSS and Horton then communicated in order to set up a time and location so that SAMUEL ROSS could make the kickback payment to Horton. Once SAMUEL ROSS received the payment, he converted a portion of the payment to cash, and then met in person with Horton and gave him a portion of that cash as a kickback payment from the First Contract.

In or around May 2022, Horton sent a text message to SAMUEL ROSS that read: "We will do another [contract] in the new school year for the work. Our fiscal

year starts July 1st to July 1st." SAMUEL ROSS understood that Horton was setting up a second contract for Asset Protection to facilitate payment to SAMUEL ROSS from District 65, a portion of which proceeds would be kicked back to Horton. At Horton's direction, SAMUEL ROSS submitted documents for a second contract between Asset Protection and District 65.

In or around November 2022, SAMUEL ROSS and Horton signed a contract in the amount of $85,000 to have Asset Protection perform loss prevention services for District 65 (the "Second Contract"). As part of the Second Contract, SAMUEL ROSS falsely certified in the contract that no District 65 employee had an economic interest in the contract or in the business of Asset Protection, knowing when he completed the certification that Horton expected to receive cash kickback payments from the proceeds of the Second Contract.

After the Second Contract was finalized, Horton routinely directed SAMUEL ROSS to submit invoices to District 65 on the Second Contract. Between in or around November 2022 and in or around May 2023, SAMUEL ROSS submitted five invoices for payment on the Second Contract ranging in amounts from $14,000 to $20,000. Horton approved each invoice. After each invoice was approved, Horton contacted SAMUEL ROSS and asked whether SAMUEL ROSS had received payment on each invoice. Based on Horton's prior direction to SAMUEL ROSS and SAMUEL ROSS's prior kickback payments to Horton, SAMUEL ROSS understood that, each time,

Horton was asking about whether SAMUEL ROSS had received the District 65 payment because Horton expected to receive a portion of the payment as a kickback.

Each time, SAMUEL ROSS and Horton communicated in order to set up a time and location so that SAMUEL ROSS could make the kickback payment to Horton. Each time SAMUEL ROSS received payment from District 65 as part of the Second Contract, he converted part of each payment to cash, and provided thousands of dollars of cash to Horton, or, in one instance, to a family member of Horton who was acting at Horton's direction. SAMUEL ROSS made kickback payments to Horton on the First and Second Contracts at various locations, to include in or around Ascension School in Oak Park, Mastro's Steakhouse in Chicago, Edward/Elmhurst Hospital in Elmhurst, a Hermes retail store in Chicago, and SAMUEL ROSS's residence in Berwyn.

All of the District 65 direct deposit payments under the First and Second Contracts were made into the Samuel Ross personal account. For some of the District 65 payments under the Second Contract, SAMUEL ROSS transferred the District 65 payments from the Samuel Ross personal account to the Asset Protection business account and then withdrew cash from the Asset Protection business account to make the kickback payments to Horton.

SAMUEL ROSS did not perform most of the services for which he invoiced District 65 on the Second Contract, and Horton knew that SAMUEL ROSS had not provided those services. SAMUEL ROSS falsely and fraudulently represented to

District 65 that these many items of services described in the invoices had been performed, knowing he had not performed the work. On multiple occasions, SAMUEL ROSS informed Horton that he had not yet performed the services called for under the contract, but Horton directed SAMUEL ROSS to submit an invoice anyway. At Horton's direction, SAMUEL ROSS submitted the invoices, repeatedly billing District 65 for services that he had not performed.

SAMUEL ROSS was friends with Antonio Ross. In or around late 2023 or early 2024, SAMUEL ROSS spoke to Antonio Ross at Antonio Ross's residence in Chicago. During this conversation, Antonio Ross told SAMUEL ROSS that he had also been making payments to Horton on District 65 contracts and that some of the payments had been funneled through Individual A (Horton's sibling).

As part of the scheme, SAMUEL ROSS obtained approximately $124,500 from District 65 and paid Horton at least $30,000 in cash kickbacks from the proceeds of Asset Protection's two contracts with District 65.

On or about June 2, 2023, at Evanston, in the Northern District of Illinois, Eastern Division, and elsewhere, SAMUEL ROSS and Horton, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an email from SAMUEL ROSS, using the email address "sam.ross@ap-specialist.com," to Individual B, using an email account held at Google, with an attached invoice that falsely represented that Asset Protection had provided certain

services to District 65, and which email was processed through servers outside of Illinois.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. Count Eight carries a maximum sentence of 20 years' imprisonment. Count Eight also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Eight the judge also may impose a term of supervised release of not more than three years.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the count to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2025 Guidelines Manual.

b. **Offense Level Calculations.**

**Count Eight**

i. Pursuant to Guideline § 2C1.1(a)(1), the base offense level is 12 because defendant was not a public official.

ii. Pursuant to Guideline § 2C1.1(b)(1), the offense level is increased by two levels because more than one kickback was involved.

iii. Pursuant to Guideline § 2C1.1(b)(2), the offense level is increased by eight levels because the value of anything obtained by the defendant, who was acting with a public official, was $124,500, which is more than $95,000 and less than $150,000. The government acknowledges that under the amendments to the Sentencing Guidelines effective November 2026, the offense level will be increased by six levels.

iv. Pursuant to Guideline § 2C1.1(b)(3), the offense level is increased by four levels because the offense involved a public official in a high-level decision-making or sensitive position.

v. Based on the facts now known to the government, defendant does not receive any criminal history points from Chapter Four, Part A, and otherwise meets the criteria set forth in Guideline § 4C1.1(a). Therefore, the offense level is decreased by 2 levels.

vi. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the

government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vii. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government and the Sentencing Guidelines currently in effect, the government anticipates the offense level to be 21 which, when combined with the anticipated criminal history category of I, results in

an anticipated advisory sentencing guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorneys and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

f. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by the government prior to sentencing. The government may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in the government's position regarding

the guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea on the basis of such corrections.

**Cooperation**

11. Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

**Agreements Relating to Sentencing**

12. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this agreement, then the government shall move the court, pursuant to Guideline § 5Kl.l, to depart downward from the low end of the applicable guideline range in an amount to be determined by the government at the time of sentencing. Defendant shall be free to recommend any sentence.

13. If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the

preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to Guideline § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15. Regarding restitution, defendant agrees to pay restitution to District 65 arising from the offense conduct and relevant conduct set forth above, together with any jointly liable codefendants, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664. Defendant further understands that the Internal Revenue Service will use the amount of restitution ordered as a basis of a civil assessment under Title 26, United States Code, Section 6201(a)(4). Defendant understands that the amount of tax loss as calculated by the Internal Revenue Service may exceed the amount of tax due as calculated for restitution in this criminal case.

16. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title

18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

18. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

19. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the amended indictment against defendant.

**Forfeiture**

20. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

21. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however,

the United States Department of Justice will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

22. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## <u>Acknowledgments and Waivers Regarding Plea of Guilty</u>

### Nature of Agreement

23. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 25 CR 654-3.

24. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

25. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorneys would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a

reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorneys would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii. With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine

whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b. **Wavier of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

26. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

27. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

28. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

29. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

30. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

31. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

32. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

35. Defendant and his attorneys acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

36. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorneys. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 9-29-26

Andrew S. Boutros / RMR
ANDREW S. BOUTROS
United States Attorney

Emily C.R. Vermylen
EMILY C.R. VERMYLEN
ELIE ZENNER
MORRIS PASQUAL
Assistant United States Attorneys

SAMUEL ROSS
Defendant

SUSAN PAVLOW
STEVEN FINE
Attorneys for Defendant