FILED
10/13/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ANTONIO ROSS

No. 25 CR 654-2

Judge Thomas M. Durkin

**PLEA AGREEMENT**

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant ANTONIO ROSS, and his attorney, VICTOR HENDERSON, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

**Charges in This Case**

2. The amended indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346 (Counts 1-4).

3. Defendant has read the charges against him contained in the amended indictment, and the charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Four of the amended indictment, which charges defendant with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Four of the amended indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline §1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

### *Background*

Evanston/Skokie School District 65 was a public school district and unit of local government governed by the District 65 Board of Education (the "District 65 Board") and located in the Northern District of Illinois. District 65 contracted with certain vendor-companies to provide professional services that supported the district's operations.

Devon Horton was employed as the superintendent of District 65 and supervised the day-to-day operations of District 65. ANTONIO ROSS acknowledges that as superintendent of District 65, Horton was an agent of District 65 and owed a duty of honest services to District 65.

ANTONIO ROSS was the sole owner and employee of Connecting the Dots Leadership Initiative LLC ("Connecting the Dots"), an Illinois limited liability company. ANTONIO ROSS controlled an account in the name of Connecting the Dots at JP Morgan Chase Bank (the "Connecting the Dots business account").

***The Scheme***

ANTONIO ROSS knowingly participated in a scheme in which Horton used his position as the District 65 superintendent to award contracts and to approve invoices on behalf of District 65 in exchange for agreeing to accept and accepting kickbacks from vendors of District 65. As part of the scheme, ANTONIO ROSS agreed to pay and paid money to Horton in exchange for steering District 65 contracts to Connecting the Dots and approving invoices so that Connecting the Dots would receive payment on the contracts, in violation of Title 18, United States Code, Sections 1343 and 1346. On some of the invoices, ANTONIO ROSS falsely billed District 65 for work and services which ANTONIO ROSS knew Connecting the Dots had not performed.

In or around August 2020, ANTONIO ROSS incorporated Connecting the Dots with the State of Illinois. ANTONIO ROSS prepared and submitted a contract proposal to District 65 such that Connecting the Dots would provide consulting services to assess the implementation of a Student Behavior Response Curriculum for District 65.

In or around October 2021, ANTONIO ROSS and Horton signed a contract in the amount of $20,000 to have Connecting the Dots perform consulting services for District 65 (the "Initial Contract"). Later in or around January 2022, ANTONIO ROSS submitted the first Connecting the Dots invoice in the amount of $2,500 to District 65, and Horton approved the invoice. In or around March 2022, ANTONIO ROSS submitted the second Connecting the Dots invoice in the amount of $17,500 to District 65, and Horton approved the invoice.

In or around April 2022, ANTONIO ROSS and Horton signed an amendment to the Initial Contract in the amount of $25,000 to have Connecting the Dots perform consulting services for District 65 (the "Contract Amendment."). Later in or around May 2022, ANTONIO ROSS submitted the first Connecting the Dots invoice under the Contract Amendment in the amount of $2,500 to District 65, and Horton approved the invoice. District 65 made a direct deposit of $25,000 into the Connecting the Dots business account as payment on the first invoice under the Contract Amendment. ANTONIO ROSS converted a portion of the District 65 payment into cash, and gave a portion of that cash to Horton based on his agreement with Horton as described above.

In or around July 2022, Horton provided ANTONIO ROSS with a notice that District 65 wished to extend the Initial Contract in the amount of $94,500 and provided a Scope of Work to have Connecting the Dots perform additional consulting

services for District 65 (the "Contract Extension"). The Contract Extension incorporated the Initial Contract by reference.

Between August 2022 and May 2023, ANTONIO ROSS submitted nine invoices to District 65 under the Contract Extension for consulting services provided to District 65, and Horton approved each of the invoices. At Horton's direction, each of the nine invoices submitted by ANTONIO ROSS to District 65 under the Contract Extension was in the amount of $10,500, for a total amount of $94,500. District 65 made direct deposits of $10,500 into the Connecting the Dots business account for each of the nine invoices. For certain of the invoices under the Contract Extension, ANTONIO ROSS converted a portion of the District 65 payment into cash, and gave a portion of that cash to Horton based on his agreement with Horton as described above. For certain other of the invoices under the Contract Extension, ANTONIO ROSS transferred a portion of the District 65 payment via Zelle transfer to Horton based on his agreement with Horton as described above. For certain other of the invoices under the Contract Extension, and based on his agreement with Horton as described above and at Horton's direction, ANTONIO ROSS transferred a portion of the District 65 payment via Zelle transfer to Individual A, Horton's sibling, who then transferred payment to Horton.

ANTONIO ROSS did not perform some of the services for which he invoiced District 65 on the Contract Extension. Horton directed ANTONIO ROSS to invoice District 65 as such, in even installments, even though the services were not fully

performed. Horton represented to ANTONIO ROSS that the services would be implemented at a later date, pursuant to District 65's schedule. Accordingly, ANTONIO ROSS falsely represented to District 65 that some services described in the invoices had been performed, knowing he had not performed the work.

As part of the scheme, ANTONIO ROSS obtained approximately $119,500 from District 65 and paid Horton at least $41,900 in cash from the proceeds of Connecting the Dots' contracts with District 65.

On or about November 30, 2022, at Evanston, in the Northern District of Illinois, Eastern Division, and elsewhere, ANTONIO ROSS and Horton, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an email from ANTONIO ROSS, using an email account held with Microsoft, to Individual B, using an email account held with Google, with an attached invoice that falsely represented that Connecting the Dots had provided certain professional services to District 65, and which email was processed through servers outside of Illinois.

**Maximum Statutory Penalties**

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. Count Four carries a maximum sentence of 20 years' imprisonment. Count Four also carries a maximum fine of $250,000. Defendant

further understands that with respect to Count Four the judge also may impose a term of supervised release of not more than three years.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the count to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2025 Guidelines Manual.

b. **Offense Level Calculations.**

**Count Four**

i. Pursuant to Guideline § 2C1.1(a)(1), the base offense level is 12 because defendant was not a public official.

ii. Pursuant to Guideline § 2C1.1(b)(1), the offense level is increased by two levels because more than one payment was involved.

iii. Pursuant to Guideline § 2C1.1(b)(2), the offense level is increased by eight levels because the value of anything obtained by the defendant, who was acting with a public official, was $119,500, which is more than $55,000 and less than $150,000. The government acknowledges that under the amendments to the Sentencing Guidelines effective November 2026, the offense level will be increased by six levels.

iv. Pursuant to Guideline § 2C1.1(b)(3), the offense level is increased by four levels because the offense involved a public official in a high-level decision-making or sensitive position.

v. Based on the facts now known to the government, defendant does not receive any criminal history points from Chapter Four, Part A, and otherwise meets the criteria set forth in Guideline § 4C1.1(a). Therefore, the offense level is decreased by 2 levels.

vi. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vii. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant

is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government and the Sentencing Guidelines currently in effect, the government anticipates the offense level to be 21 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation.

Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

f. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by the government prior to sentencing. The government may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in the government's position regarding the guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea on the basis of such corrections.

**Agreements Relating to Sentencing**

10. Each party is free to recommend whatever sentence it deems appropriate.

11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12. Regarding restitution, defendant agrees to pay restitution to District 65 arising from the offense conduct and relevant conduct set forth above, together with any jointly liable codefendants, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664. Defendant further understands that the Internal Revenue Service will use the amount of restitution ordered as a basis of a civil assessment under Title 26, United States Code, Section 6201(a)(4). Defendant understands that the amount of tax loss as calculated by the Internal Revenue Service may exceed the amount of tax due as calculated for restitution in this criminal case.

13. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

14. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the amended indictment against defendant.

**Forfeiture**

17. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

18. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United States Department of Justice will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

19. Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the forfeiture money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

20. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

21. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 25 CR 654-2.

22. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

23. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii. With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

24. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

25. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

26. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that

providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

27. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

28. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

29. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

30. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

31. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

32. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 13 October 2026

Andrew S. Boutros / RMR
ANDREW S. BOUTROS
United States Attorney

[signature]
ANTONIO ROSS
Defendant

Emily C.R. Vermylen
EMILY C.R. VERMYLEN
ELIE ZENNER
MORRIS PASQUAL
Assistant United States Attorneys

[signature]
VICTOR HENDERSON
Attorney for Defendant